## Booth *vs.* Bunce and others.

B., being the holder of two promissory notes made by M. & G., dated January 1, 1855, recovered a judgment thereon on the 17th of December, 1859. At the date of the notes, M. &. G. were partners in the business of manufacturing machinery, &c. In 1856 G. retired from the firm, and the business was carried on by M. & L., under the firm of M. & Co. The N. Y. Steam Saw Mill and Machine Co. was incorporated October 20, 1857, M. & L. with three others, being the corporators therein. On the 21st of October, 1857, M. & L. made two bills of sale of the stock, property and machinery of the firm of M. & Co. to the new corporation, which thereupon became the owner thereof, and from thence carried on the business, M. superintending and managing the same as the professed agent of the company. In 1859 the company manufactured a steam engine, upon which, in December of that year, B. levied, by virtue of an execution issued upon his judgment, on the ground that it was the property of M. and the sale and transfer to the corporation was in pursuance of a fraudulent arrangement between them, by which the corporation should hold the property and conduct the business for M.'s benefit. Upon a sale of the engine, by the sheriff, B. became the purchaser. The defendants recovered a judgment against the saw mill company, on the 31st of March, 1860. An execution being issued upon that judgment, the sheriff levied upon the steam engine, then being in B.'s possession, and sold and delivered the same to the defendants. In an action by B., to recover the value of the engine, *it was held* that the rights of the creditors of the steam saw mill company to have its property applied in liquidation of their debts, were superior and prior to any claims which M. and his creditors could have to the same property.

*Held, also,* that it was immaterial what was the purpose of M. and the steam saw mill company, in regard to the property and business of the latter; the defendants not being parties to it, and having no knowledge of it, or rights which could be impaired or affected by it.

*Held, further,* that the facts being undisputed, the law determined that M. had no right of property in the engine, as against the claims of the creditors of the steam saw mill company, which could be the subject of seizure and sale upon B.'s execution against M.

THIS was an appeal by the plaintiff from a judgment of nonsuit ordered at the circuit, and from an order subsequently made at a special term, denying a motion for a new trial. The action was brought to recover the value of a steam engine seized and taken away from the plaintiff, by the defendants, and converted to their own use.

*R. W. Van Pelt,* for plaintiff.

*A. Therasson,* for the defendants.

*By the Court,* BROWN, J.   The plaintiff, Alfred Booth, is the creditor of the late firm, composed of William Montgomery and William Garrabant, upon two promissory notes for $965.32 each, dated January 1st, 1855, made to one Isaac Reese or order, and by him indorsed over to the plaintiff. Upon these notes he recovered a judgment against Montgomery and Garrabant for $2268.38, which was filed and docketed in Westchester county clerk's office, December 17th, 1859. Reese had been copartner of Montgomery in the machine manufacturing business, at Yonkers, in the county of Westchester.   This firm ceased to exist on the 1st January, 1855, and the notes were given for Reese's interest in the business, which Montgomery afterwards conducted on his own account. Garrabant, after this, became partner with him, and so continued until the spring of 1856, when he retired, and the business was carried on by Montgomery and one George D. Lund, under the name of Montgomery & Co.   The New York Steam Saw Mill and Machine Company became incorporated, under the statute, on the 20th of October, 1857, by a certificate of that date, duly executed and filed in the clerk's office of the city and county of New York, and a duplicate filed with the secretary of state.   This certificate is executed and acknowledged by William Montgomery, Jesse M. Emerson, George D. Lund, Asahel R. Jones and Appleton Oaksmith.   On the 21st October, of the same year, Montgomery and Lund made two bills of sale of the stock, property and machinery of the firm, at Yonkers, to the New York Steam Saw Mill and Machine Company, who thereupon became the owners thereof, and from thence carried on the business of manufacturing machinery, steam engines, &c. in the same place, in its own name, Montgomery superintending and managing the business as the professed agent of

the company. After this, the company contracted debts and incurred obligations in the course of its business, and manufactured and constructed machinery and steam engines, and amongst other property, in the year 1859, it made and manufactured the engine called in the evidence the Thomson engine, which is the property in controversy in this action. On the 19th December, 1859, Alfred Booth, the plaintiff in this action, issued an execution upon his judgment against Montgomery and Garrabant to the sheriff of Westchester, who thereupon levied upon the property in the company's machine shop, including the Thomson engine, and sold the same to Alfred Booth, who thereupon claimed to be the owner thereof. This engine he afterwards sent to No. 222 Pearl street, New York. In the meantime the New York Steam Saw Mill and Machine Company had become indebted to the defendants Jeremiah S. Bunce, James Esler and Delphin B. Cobb, composing the firm of J. S. Bunce & Co., in the usual course of business, for steam boilers furnished, and on other accounts, which indebtedness assumed the form of a judgment in favor of the firm, for $2513.58, and was docketed and filed in the proper office in the city of New York on the 31st of March, 1860. Upon this judgment an execution was issued against the saw mill and machine company, to the sheriff of the city and county of New York, on the same day, by virtue of which he levied upon the steam engine in question, at No. 222 Pearl street, New York, and sold and delivered the same to the defendants Daniel McLeod and James B. Windle. The present action is brought to recover the value of the engine. The facts which I have stated appeared from the evidence at the trial, before Mr. Justice Emott, at the Orange circuit, in June, 1861, when the plaintiff was nonsuited, and hence this appeal.

The plaintiff claimed title to the property in question under his judgment and execution against Montgomery & Garrabant, and a sale thereon to himself; while the defendants claimed, in like manner, as judgment and execution creditors

of the steam saw mill and machine company. It was a fact to be established by the plaintiff, before he could recover, that the engine was the property of his judgment debtor. It was not pretended that it was a part of the same property transferred by Montgomery & Garrabant to Montgomery & Co., and by Montgomery & Lund to the steam saw mill company. Nothing of the kind was claimed. Indeed, the proof showed that it had no existence during the lifetime of these firms, but was made and manufactured by the company two years after they ceased. The plaintiff proposed to supply the lack of this most important fact by an offer to show that the steam saw mill and machine company was organized to defraud the creditors of William Montgomery & Co., and that the business was carried on in the name of the company, for a like purpose. This evidence was objected to and rejected, and thereupon the plaintiff excepted. No offer or attempt was made to show the complicity of J. S. Bunce & Co. with this fraudulent purpose. They were creditors of the corporation, in good faith, and in the usual course of business. The conflict was not between the creditors of Montgomery and a person or corporation holding his property and conducting business in its own name, for his benefit, and with an intent to defeat their claims. It is between a creditor of Montgomery and a creditor of the corporation innocent of any wrongful purpose, who has dealt with it in good faith, and in the confidence that its property was to be applied in payment of its own debts and obligations. It is a bold proposition, certainly, that a creditor of Montgomery shall take the property of the corporation to pay his debts, leaving its own obligations unsatisfied, upon the sole ground that there is a fraudulent arrangement between it and Montgomery to hold the property and conduct the business for his benefit. This is the extent of the plaintiff's proposition, and it disregards, altogether, the principle that the rights of the creditors of the machine company to have its property applied in liquidation of their debts are superior and prior to any rights

or claims which Montgomery can have to the same property. If the plaintiff, Alfred Booth, had proceeded by bill in equity to have his debt paid out of the effects of the corporation, upon the ground that the property and business was really his, and conducted for his benefit, no decree could have been made which did not first provide for the payment of its own debts in preference to the debts or claims of the plaintiff against Montgomery, or any other corporator. Nothing can be plainer, I think, than the proposition that the property of a debtor in equity belongs to his creditor, and should be first appropriated to pay his just claims. It was, therefore, wholly immaterial what was the purpose of Montgomery and the saw mill company, in regard to the property and business of the latter. J. S. Bunce & Co., the creditors of the saw mill company, were not parties to it. They had no knowledge of it, and no rights which they had, as creditors, could be impaired or affected by it. I need not pursue the inquiry farther. Mr. Justice Lott said every thing which could well be said on the subject, when the case was heard at a previous term, and I need not repeat it.

The plaintiff thinks he should have been permitted to go to the jury. To use his own words: "It was eminently a question of fact, which should have been submitted to the jury, whether the engine in question was the property of William Montgomery, or of the steam saw mill and machine company." It is to be remarked that outside of the question of fraud, which the court rejected as irrelevant and immaterial, there was no disputed fact in the case, and nothing for the jury to pass upon. The facts being undisputed, the law determined that Montgomery had no right of property in the engine, as against the claims of the creditors of the saw mill company, which could be the subject of seizure and sale upon the plaintiff's execution against William Montgomery.

The judgment should be affirmed.

[KINGS GENERAL TERM, December 9, 1861. *Emott, Brown* and *Scrugham,* Justices.]